CHARLES M. GORMAN, Respondent, *v.* ROCCO LABELLA, Appellant.

County Court, Oneida County, January, 1933.

*F. Tomanio* [*M. S. Ogonowski* of counsel], for the appellant.

*Bartle Gorman* for the respondent.

HAZARD, J.  The action was in replevin, plaintiff seeking to recover one Seeburg coin-operated phonograph, serial No. 169391. The facts involved are practically undisputed, and are about as follows: One Albert and wife were running a place at 3 Lees street, Utica, and were sold what I shall hereafter refer to as the machine in question by the witness Mitchell.  It was originally sold on contract, but apparently, or inferentially, was paid for.  About June 27, 1932, the Alberts at that time being in certain troubles, of which this court is aware, sold the machine to the plaintiff for $85.  (Incidentally, he testified to its worth as $200.)  There was nothing in the nature of a bill of sale given, and no physical act in the nature of a delivery made.  It was agreed between the plaintiff and the Alberts that the machine should be left right there " on a commission basis."  Along about the sixth or seventh of September, the Alberts' troubles becoming more acute in the meantime, they sold the same machine for the same price to the defendant, but there was, however, this difference, the defendant took the machine away in his automobile on September tenth.  Defendant testified that he did not know anything about plaintiff's interest in the machine, and there was no proof that he did.

The plaintiff in some manner discovering that the machine was in the defendant's possession, brought this action to recover its possession, the action being in replevin in the usual form.  The court below has after a trial awarded the possession of the instrument to the plaintiff.

I think that as a matter of common law the judgment might be sound and correct.  I think the title to the machine would pass, even if not accompanied by delivery.  There do not seem to be

any prescribed formalities about the sale of personal property, and although what is known as a " bill of sale " is a familiar document in the law offices, I have never been able to find any provision with reference to it, or any mention of it in the laws of our State. Apparently, it has no status, nor is there any book provided for recording or docketing it in the county clerk's office. Of course, I am not referring to contracts of conditional sale, but to ordinary straight bills of sale, and with reference to them I reach the conclusion that they have no legal status, or at least that there is no requirement in the law that the passing of such an instrument or document is a necessary part of a sale, nor is its filing provided for by law. Presumably, under such circumstances, as a matter of common law, the title having passed to Gorman, the Alberts were unable to pass any legal title to LaBella. However, we have section 106 of the Personal Property Law, which seems to provide a special rule for just this state of affairs. The rule, stripped of verbiage, which does not matter in this case, reads as follows: " Where a person having sold goods continues in possession of the goods, * * * the delivery or transfer by that person, * * * of the goods, * * * under any sale * * * or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same."

It seems to me that this section applies literally and expressly to the situation at bar. I will assume that the reason for it is to protect persons buying from someone who once had title, and who still has possession. Of course, it may work a hardship in some cases, but the first purchaser can always protect himself by moving the article purchased. As applied in the abstract to the situation at bar, it would seem that, under the statute quoted, the plaintiff, having seen fit to trust the possession of his machine in the precarious custody of the Alberts, must be the sufferer if they again sell the machine to someone else, who had no notice of his rights. In other words, if the plaintiff was willing to trust the Alberts, and they " threw him down," in the vernacular, he is the one who, apparently under section 106, will have to suffer. Of course, it is doubtless true that there are many of just such machines, and many other similar machines and apparatus and articles of personal property placed around in various resorts under just about the same condition as this machine was, but with the important difference, that the title to this machine *never was in the bailee.*

I am not unaware of a line of contra decisions in the State of

Massachusetts, but to my mind they are in effect nullifying the statute, which is similar to ours, and as concededly no other jurisdiction is following those rulings, I feel disinclined to do so, but, rather, to support the statute.

A somewhat interesting question of law has been raised by numerous objections taken by both sides to the evidence of the two similar transactions of the Alberts, by the plaintiff and defendant, respectively. In each instance and on each side the claim of " hearsay " was raised, and this presents a rather interesting question, viz., as to whether either side might detail transactions had by it, respectively, with the Alberts, of course, in the absence of the other side. I do not think that such a situation would constitute strictly what is known as " hearsay evidence." My understanding of " hearsay " is that it deals with statements made by some third person in the hearing of the witness, and in a situation, of course, in which the third person was not under oath. But waiving that technicality, it is ordinarily true as a general proposition that any matter occurring in the absence of the other party is not competent as against him. I rather assume that this rule could not apply in a case like this, to prevent either side from telling where and when and in what manner he became the owner of the article replevined. I have been unable in the rather limited time at my disposal to find much authority on this subject.

There is, however, the case of *DeWolf* v. *Williams* (69 N. Y. 621), which, perhaps, may be considered as authority for the ruling made with reference to receiving evidence regarding the purchase of the chattel in question during the absence of the other party. There is also the case of *Fox* v. *Cox* (50 N. E. 92), which may have some bearing upon the point in question. I gather that, if the evidence is to be regarded as competent, and I think it is, it is because it is to be regarded as part of the *res gestœ*.

In this case both sides presented such evidence, and both objected to it as against his opponent. Granting that as a general proposition anything that occurs in the absence of one party to the action is not competent as against him, I still think that a party to a replevin action must, from the necessity of the case, be allowed to testify that at a certain time and place, and for a certain amount, he purchased the article of personal property in suit. It would be a strange law or practice that would forbid this, and if there were such a rule it would seem to make the establishing of title utterly impossible, except in the one case that the plaintiff happened to buy the article while his opponent was there present. It seems to me that this cannot possibly be the law. Anyway, in the case at bar, both

sides proved that they bought the machine in question from the Alberts, and if there was anything wrong about the practice, which I do not believe, one was as guilty as was the other.

Strictly because of section 106 of the Personal Property Law, I am compelled to decide that the defendant should have succeeded on the trial, and the judgment must, therefore, be reversed, with costs.