In the Matter of the Assignment of CENTRAL PARK DAIRYLAND, INC., Assignor, to WILLIAM SADLER, Assignee.

County Court, Erie County, June 3, 1942.

*Fisher & Kitzinger* for assignee.

*O. L. Van Horne* for Ebenezer C. Talbot, creditor.

WARD, J. This is the return of an order to show cause why Ebenezer C. Talbot should not surrender up certain cattle or, in the alternative, pay over to William Sadler, as assignee for the benefit of creditors, the value thereof.

The petition of William Sadler states that he is the " duly qualified " assignee herein; that he, as such assignee, claims title to sixteen head of cattle whose ear-tag numbers are set forth; that on February 18, 1942, Ebenezer C. Talbot caused said cattle to be seized from a farm owned by petitioner, as assignee, and without the latter's knowledge or consent; that the petitioner claims title to such cattle by reason of a bill of sale executed by Everhardus C. Mackay and Marie M. Mackay, his wife, to Central Park Dairyland, Inc., dated March 11, 1941, filed in the Erie County Clerk's office on March 12, 1941, and " by other sale and transfer to Central Park Dairyland, Inc.; " that said Talbot seized the cattle by reason of a conditional

sales contract dated December 9, 1940; that title to the cattle rested in "Central Park Dairyland, Inc., as an innocent purchaser for value, and that the conditional sales contract attached was insufficient in law to give constructive notice to Central Park Dairyland, Inc., of the interest of said Talbot in the said cattle."

The answering affidavits show that the consideration for the bill of sale and conveyances from Everhardus C. Mackay and his wife to the Central Park Dairyland, Inc., made March 11, 1941, was fifty per cent of the stock of the corporation, and also Everhardus C. Mackay was to become, and did become immediately thereafter, an officer of the corporation; that the assignment herein, dated February 3, 1942, was executed and acknowledged by "Everhardus C. Mackay as President of the Central Park Dairyland, Inc.;" that Everhardus C. Mackay told one Daniel R. Ward that on March 11, 1941, when he and "Maria M. Mackay" gave a bill of sale of certain "personal property including the cattle on which E. C. Talbot then held a conditional sales contract, that he told the officers and attorney representing the Central Park Dairyland, Inc., in the transaction, that E. C. Talbot had a claim on certain cows which were included in said bill of sale and advised them as to the approximate amount then owing, and unpaid, on said cows and that said cows were covered by a conditional sales contract or note," that while Everhardus C. Mackay was a director and president of the Central Park Dairyland, Inc., he asked for extensions of time to pay on his note owing to E. C. Talbot; that during the past thirty-five years an acceptable practice in describing cattle in a chattel mortgage or conditional sales contract was by color and age; that ear-tag numbers on cattle were used for identification purposes only after tuberculosis tests were made; that the said cattle were sold at public auction on March 6, 1942, after notice of sale was duly posted and published; that the balance due on the conditional sales contract was about equal to the net return on said sale, which was fair and proper.

The bill of sale in question describes the livestock as: "63 cows, 14 one-year heifers, 6 calves, 4 teams, 2 bulls, chickens," and the horses are further described by color and age, the cows by ear marks.

The conditional sales contract herein, which was duly filed according to law, describes the subject-matter thereof as: "Eighteen black and white cows of various markings and ages, two pure bred Ayrshire cows."

These facts are either agreed upon by stipulation or are not controverted or traversed.

Section 65 of the Personal Property Law provides, in part, as follows: " Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale."

Within the language of the foregoing section, the assignee is neither a purchaser without notice nor a creditor of the conditional buyer with a lien acquired by attachment or levy. " His title is acquired by appointment and not by purchase, and he stands in the shoes of his assignor and takes title subject to every equity and claim that might be asserted by third parties against his assignor." (*Matter of Pellegrini*, 248 App. Div. 526. See, also, *Matter of Lloyd-Stuart Co., Inc.*, [*Mendelson*], 256 App. Div. 965.)

The only rights, if any, acquired by the assignee in these cows spring from the bill of sale between the conditional vendee, Everhardus C. Mackay, who became president of the assignor, and the assignor, Central Park Dairyland, Inc.

A bill of sale, as such, has no legal status, and there is no requirement in the law that the delivery of such an instrument is a necessary part of a sale; nor is its filing provided for by law. (*Gorman* v. *LaBella*, 146 Misc. 408.) Therefore, no advantage concerning " notice to the world " is acquired by filing a bill of sale, even though a county, city, village, or town clerk should accept the same for filing.

A conditional sale contract is different. If it is properly filed or if the purchaser from the buyer has notice, the conditional vendor is protected. It has been held that a buyer's judgment creditor and the sheriff selling cows purchased under execution were liable for conversion, where they had actual notice of the buyer's conditional sale contract. (*Sisson* v. *First National Bank*, 233 App. Div. 506.)

In this case, the conditional sales contract was properly filed before the bill of sale was entered into and filed; the buyer from the conditional vendee possessed complete knowledge of the existence and general terms of the conditional sales contract. Therefore, the rights of the conditional vendor were fully protected.

Much has been said, and some authorities of sister States cited, questioning the sufficiency of the description of the sixteen cows  The description of " cows," " heifers," " calves,"

" teams," " bulls," and " chickens " is not a suitable subject for exact formula. The use of ear marks, the reference to age, color, and breed, the locus of the farm upon which they are to be kept, and the pet name given to the animal are all helpful, but are certainly not obligatory in this State. The description of the cows in the bill of sale is not such a model of perfection as to invite judicial approbation, nor is the description in the conditional sales contract one to be stricken out for insufficiency, thereby avoiding a $2,700 instrument as a matter of law.

Motion of the assignee is denied, without costs. Prepare and submit order accordingly.